ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
ddonadio@braytonlaw.com
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT TURNER and BETTY TURNER, <br><br> Plaintiffs, <br><br> vs. <br><br> CRANE CO., <br><br> Defendant. | No. <br><br> COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL |

## I.
## PARTIES

1.      Plaintiff in this action, ROBERT TURNER , has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.  Plaintiff, BETTY TURNER, has sustained loss of consortium as set forth in the Third Cause of Action.

2.      Plaintiff ROBERT TURNER  sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3.      The pathogenesis of Plaintiff ROBERT TURNER 's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

///

4. All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff ROBERT TURNER's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff ROBERT TURNER, resulting in cumulative, progressive, incurable lung diseases.

5. Plaintiff ROBERT TURNER claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6. As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff ROBERT TURNER.

7. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. <u>Jurisdiction</u>: Plaintiff ROBERT TURNER is a citizen of the State of California.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CRANE CO. | Delaware/Connecticut |

///

1    This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

4    9.    <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF ROBERT TURNER  COMPLAINS OF DEFENDANTS CRANE CO., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.    At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof,

assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CRANE CO. | BARKSDALE CONTROL PRODUCTS |
|  | CHAPMAN VALVE CO. |
|  | COCHRANE CORP. |
|  | CRANE CO. VALVE DIVISION |
|  | CRANE PLUMBING & HEATING AKA CRANE PLUMBING-HEATING SHEETMETAL, INC. |
|  | CRANE SUPPLY |
|  | CYCLOTHERM |
|  | JENKINS BROS. |
|  | JENKINS VALVES |
|  | MIDWEST PIPING & SUPPLY |
|  | PACIFIC STEEL BOILER CORPORATION |
|  | PACIFIC VALVES |
|  | REPCAL BRASS MANUFACTURING CO. |

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

1  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or
2  otherwise directing and/or facilitating the use of, or advertising a certain product, namely
3  asbestos and other products containing asbestos.

4     12.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and
5  each of them, singularly and jointly, negligently, and carelessly researched, manufactured,
6  fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
7  to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,
8  supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
9  installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
10 rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
11 and other products containing asbestos, in that said products caused personal injuries to users,
12 consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter
13 collectively called "exposed persons"), while being used in a manner that was reasonably
14 foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by
15 "exposed persons".

16     13.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
17 exercise due care in the pursuance of the activities mentioned above and defendants, and each of
18 them, breached said duty of due care.

19     14.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
20 have known, and intended that the aforementioned asbestos and products containing asbestos and
21 related products and equipment, would be transported by truck, rail, ship, and other common
22 carriers, that in the shipping process the products would break, crumble, or be otherwise
23 damaged; and/or that such products would be used for insulation, construction, plastering,
24 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
25 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
26 breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the
27 release of airborne asbestos fibers, and that through such foreseeable use and/or handling
28 "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to

1  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
2  persons working in proximity to said products, directly or through reentrainment.

3      15.    Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-
4  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's
5  exposure to asbestos and asbestos-containing products is on current information as set forth at
6  various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and
7  incorporated by reference herein.

8      16.    As a direct and proximate result of the acts, omissions, and conduct of the
9  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure
10  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,
11  or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and
12  incorporated by reference herein.

13      17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung
14  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers
15  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to
16  asbestos and asbestos-containing products over a period of time.

17      18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-
18  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-
19  containing products presented risk of injury and/or disease.

20      19.    As a direct and proximate result of the aforesaid conduct of defendants, their
21  ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,
22  permanent injuries and/or future increased risk of injuries to their persons, body and health,
23  including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and
24  emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to
25  Plaintiff's general damage.

26      20.    As a direct and proximate result of the aforesaid conduct of the defendants, their
27  "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur
28  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

21. As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

24. The herein-described conduct of said defendants listed in this paragraph below, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof against the following defendant only: CRANE CO.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION
(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF ROBERT TURNER  COMPLAINS OF DEFENDANTS CRANE CO., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants,

their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30.     On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

1  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33. Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

34. Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

35. Plaintiff relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has been injured permanently as alleged herein.

36. As a direct and proximate result of the actions and conduct outlined herein, Plaintiff has suffered the injuries and damages previously alleged.

///

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Loss of Consortium)

AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF BETTY TURNER COMPLAINS OF DEFENDANTS CRANE CO., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

37. Plaintiffs incorporate by reference each and every paragraph of the First and Second Causes of Action herein.

38. Plaintiffs ROBERT TURNER and BETTY TURNER were married on October 21, 1962, and at all times relevant to this action were, and are now, husband and wife.

39. Prior to Plaintiff ROBERT TURNER's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, ROBERT TURNER has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, Plaintiff BETTY TURNER has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

40. Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

41. As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff ROBERT TURNER as set forth in this complaint, Plaintiff BETTY TURNER has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

## IV.
## PRAYER

WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

Plaintiff ROBERT TURNER :

(a) For Plaintiff's general damages according to proof;

(b) For Plaintiff's loss of income, wages and earning potential according to proof;

(c) For Plaintiff's medical and related expenses according to proof;

Plaintiff BETTY TURNER:

(d) For Plaintiff's damages for loss of consortium according to proof;

Plaintiffs ROBERT TURNER and BETTY TURNER:

(e) For Plaintiffs' cost of suit herein;

(f) For exemplary or punitive damages according to proof against defendant CRANE CO., only;

(g) For damages for fraud according to proof; and

(h) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated:   July 15, 2020                           BRAYTON❖PURCELL LLP

By: _____
David R. Donadio, Esq., S.B. #154436
Attorneys for Plaintiffs

### JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated:   July 15, 2020                           BRAYTON❖PURCELL LLP

By: _____
David R. Donadio, Esq., S.B. #154436
Attorneys for Plaintiffs

# EXHIBIT A

EXHIBIT A

Plaintiff: ROBERT TURNER

Plaintiff's injuries: Plaintiff was diagnosed with lung cancer on or about September 21, 2015, with asbestosis on or about May 30, 2016, and with asbestos-related pleural disease on or about May 15, 2016.

Retirement Status:

Plaintiff retired from his last place of employment at regular retirement age. He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| GATX Corporation<br>222 W Adams Street<br>Chicago, IL | General American<br>Loomis, CA | Laborer | 4/1951-9/1951;<br>7/1952-9/1952 |

Job Duties: Plaintiff maintained a system that cleaned fruit.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| National Guard | National Guard<br>U. S. Army Arsenal<br>Benicia, CA | Machinist | 1953-1962<br>(Approx. 4<br>weeks/year) |

Job Duties: Plaintiff maintained a machine shop used for maintenance and repair of Army equipment. Plaintiff's job duties included brake and clutch replacement work on Army trucks. Plaintiff and his crew installed asbestos-containing BENDIX (HONEYWELL INTERNATIONAL, INC.) drum brakes on the trucks. Plaintiff and his crew sanded the brake linings prior to installation. On two of the brake jobs, plaintiff removed BENDIX brakes he had previously installed. Plaintiff and his crew installed asbestos-containing BORG-WARNER (BORGWARNER MORSE TEC LLC, AS SUCCESSOR-BY-MERGER TO BORG-WARNER CORPORATION) clutches on the trucks. Plaintiff and his crew sanded the clutch discs prior to installation.

///

///

///

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Department of Defense | Mare Island Naval Shipyard<br>Vallejo, CA | Welder (Apprentice) | 07/13/1953 - 2/12/1957 |
| | | Welder | 2/13/1957 - 12/1/1968;<br>1970-6/14/1985 |
| | GUITARRO (SSN-665) | | 12/1965-1985 |
| | DRUM (SSN-677) | | 1970-1985 |
| | HAWKBILL (SSN-666) | | 9/1966-1985 |
| | PINTADO (SSN-672) | | 10/1967-1985 |
| | GRAYBACK (SSG-574) | | 7/1954-1985 |
| | HALIBUT (SSN-587) | | 4/1957-1985 |
| | PROTEUS (AS-19) | | 1953-1985;<br>1968 (2 weeks) |
| | SARGO (SSN-583) | | 2/1956-1985 |
| | THEODORE ROOSEVELT (SSBN-600) | | 11/1958-1982 |
| | SCAMP (SSN-588) | | 1/1959-1985 |
| | PERMIT (SSN-594) | | 7/1959-1985 |
| | PLUNGER (SSN-595) | | 3/1960-1985 |
| | ANDREW JACKSON (SSBN-619) | | 7/1962-1985 |
| | WOODROW WILSON (SSBN-624) | | 9/1961-1985 |
| | DANIEL BOONE (SSBN-629) | | 2/1962-1985 |
| | STONEWALL JACKSON (SSBN-634) | | 7/1962-1985 |
| | KAMEHAMEHA (SSBN-642) | | 5/1963-1985 |
| | MARIANO G. VALLEJO (SSBN-658) | | 7/1964-1985 |
| | GURNARD (SSN-662) | | 12/1964-1985 |

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Department of Defense (cont'd.) | Mare Island Naval Shipyard Vallejo, CA | Welder (Apprentice) | 07/13/1953 - 2/12/1957 |
| | | Welder | 2/13/1957 - 12/1/1968; 1970-6/14/1985 |
| | TRIESTE II (DSV-1) | | 1971-1984 |
| | Naval Air Station Alameda, CA | | 1971 |
| | ENTERPRISE (CVN-65) | | (3 months) |
| | San Diego Naval Shipyard 32nd Street San Diego, CA | | 1983-1985 (3 months) |
| | CARL VINSON (CVN-70) | | |
| | Unknown frigate | | |
| | Guam | | 1968 |
| | Unknown nuclear submarines | | |

Job Duties: Plaintiff started work at Mare Island Naval Shipyard, Vallejo, California, as an apprentice welder, completed his apprenticeship and continued as a journeyman welder. Plaintiff performed welding work on a wide variety of vessels but specialized in nuclear submarines. Plaintiff worked in the repair shop, propeller shop and machine shop. Plaintiff worked primarily on the new construction of nuclear submarines. Plaintiff performed welding work in every compartment of the submarines during new construction, including the nuclear reactor compartments and auxiliary machinery spaces. Plaintiff welded various types of pipe including stainless steel pipe. Plaintiff regularly worked in close proximity to various trades including pipefitters, insulators, machinists, electricians and laborers. Plaintiff wore asbestos-containing welding gloves and mittens manufactured by AMERICAN OPTICAL (AMERICAN OPTICAL CORPORATION). Plaintiff used asbestos-containing welding blankets manufactured by RAYBESTOS (RAYMARK INDUSTRIES, INC.). The asbestos cloth components of the gloves, mittens and blankets became frayed, deteriorated and dusty with use. Plaintiff welded tanks and bulkheads. On surface ships, plaintiff worked on the interior of a BABCOCK & WILCOX (BABCOCK & WILCOX COMPANY) boiler. Plaintiff was in close proximity to boilermakers, insulators, and brickmasons, removing, replacing, cutting and installing asbestos containing boiler gaskets, asbestos containing boiler insulation, and mixing and applying asbestos containing refractory cement. During his work on submarines, plaintiff worked in close proximity to pipefitters cutting asbestos containing GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets and removing and replacing asbestos containing FLEXITALLIC (FLEXITALLIC, INC.) gaskets. Plaintiff worked in close proximity to pipefitters installing new CRANE (CRANE CO.), WORTHINGTON (HALLIBURTON ENERGY SERVICES, INC.), and INGERSOLL RAND (INGERSOLL-RAND COMPANY) valves. Plaintiff worked in close proximity to pipefitters removing and replacing asbestos containing gaskets in steam traps. Plaintiff worked in close proximity to insulators cutting, installing, and removing asbestos containing insulation. Plaintiff worked in close proximity to pipefitters disturbing insulation while working, and riggers disturbing the insulation on pipe

sections with straps while rigging various components.  Plaintiff worked in close proximity to boilermakers removing fire brick and asbestos containing refractory cement.  Plaintiff worked in close proximity to insulators cutting and installing UNIBESTOS (PITTSBURGH CORNING CORPORATION) asbestos containing insulation in the reactor spaces of the <u>DRUM</u>, <u>HAWKBILL</u>, <u>GUITARRO</u>, and <u>PINTADO</u>.  Plaintiff worked in close proximity to sheet metal workers.  Plaintiff also worked at Naval Air Station Alameda, San Diego Naval Shipyard, and at a repair facility in Guam.  At Alameda Naval Air Station, in the early 1970's, plaintiff worked on steam piping related to the catapult systems on the <u>ENTERPRISE</u>.  Plaintiff worked near insulators who removed and installed pipecovering insulation, and pipefitters who removed and installed GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) flange gaskets.  At San Diego Naval Shipyard, in the early 1980s, plaintiff worked on steam piping related to the catapult systems on the <u>CARL VINSON</u>.  Plaintiff worked near insulators who removed and installed pipecovering insulation, and pipefitters who removed and installed GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) flange gaskets.  In approximately 1968, plaintiff sailed aboard the <u>PROTEUS</u> to Guam to work on a nuclear submarine.  Plaintiff was aboard the <u>PROTEUS</u> for approximately two weeks.  Plaintiff saw insulated piping throughout the <u>PROTEUS</u>.  Plaintiff recalls the following coworkers:  John Goodwin, deceased; Joel Davis, address currently unknown; Richard Bagg, deceased; Loren Glassburn, deceased; Darrol Daugherty, address currently unknown; Dan Alfano, deceased; Gene Georgetti, address currently unknown; George Cunningham, c/o Brayton❖Purcell LLP; Cordell Abernathy, deceased; Dean Kephart, deceased; Art Collati, address currently unknown; Ken Babcock, address currently unknown; Bob Botezar, address currently unknown; and Frank McNelly, instructor, deceased.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Montoya Roofing & Supply Co. 1396 Lemon St. Vallejo, CA  94590 | Montoya Roofing & Supply Co. Vallejo, CA | Warehouseman | 7/1958-3/1960 (on and off) |

Job Duties:  Plaintiff unloaded and stacked roofing materials in the Montoya Roofing Warehouse including composition shingles, roofing felt and roofing paper.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Kaiser Steel Napa, CA | Kaiser Steel Napa, CA | Welder | 1/1968-3/1968 |

Job Duties:  Plaintiff performed stick electrode welding and hydrogen welding.  Plaintiff welded roundabouts and other sections of the BART tube.  Plaintiff covered himself with and laid on top of worn, dusty asbestos cloth blankets.  Plaintiff wore asbestos-containing welding gloves manufactured by AMERICAN OPTICAL (AMERICAN OPTICAL CORPORATION).

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Laborforce, aka SAKCO Development Corp. 625 Market St., Room 810 San Francisco, CA 94105 | Standard Oil Richmond, CA | Welder | 4/1971-6/1971 (2 months); 1/1972-3/1972 (one day) |

Job Duties:  Plaintiff worked on a shut down.  Plaintiff worked in the tank farm, and in the refining area.  In the tank farm, plaintiff removed and installed asbestos-containing flange gaskets.  The tools plaintiff used to remove the asbestos-containing gaskets were supplied by STANDARD OIL (CHEVRON U.S.A. INC.).  Plaintiff installed asbestos-containing GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets supplied by STANDARD OIL.  In the refining area, plaintiff welded steam pipes and leaned on other pipes which would

disturb the asbestos-containing insulation and cause dust.  Plaintiff brushed asbestos-containing insulation dust that had been left behind by the cleaning crew from pipes prior to welding them.  Plaintiff chipped away asbestos containing refractory mortar in order to remove the headers from boiler units manufactured by BABCOCK & WILCOX COMPANY that used steam to purify petroleum products. Plaintiff wore asbestos-containing welding gloves and mittens manufactured by AMERICAN OPTICAL (AMERICAN OPTICAL CORPORATION).  Plaintiff scraped the asbestos-containing gaskets from the headers and cut and installed asbestos-containing GARLOCK (GARLOCK SEALING TECHNOLOGIES, LLC) gaskets.  Plaintiff worked in close proximity to insulators employed by PLANT ASBESTOS (RPI COMPANY) as they removed, cut and installed asbestos-containing pipecovering insulation.  Plaintiff was in close proximity to laborers employed by STANDARD OIL while they swept up this pipecovering dust and debris.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Almanor Manufacturing Plant P.O. Box 1330 Chester, CA | Almanor Manufacturing Plant Chester, CA | Welder | 1986 |

Job Duties:  Plaintiff performed welding for the manufacturing of metal products including window frames.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Self-employment, Chester, CA | Chester Floral Shop Chester, CA | Florist | 1987-1995 |

Job Duties:  Plaintiff owned and managed a floral shop.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Lake Almanor Country Club 501 Peninsula Drive Lake Almanor, CA | Lake Almanor Country Club Lake Almanor, CA | Security Guard | 1989-1990 |

Job Duties:  Plaintiff worked as a security guard at the main gate.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| Lake Almanor Country Club Mutual Water Co. 501 Peninsula Drive Lake Almanor, CA | Lake Almanor Country Club Lake Almanor, CA | Maintenance Man | 1990 |

Job Duties:  Plaintiff performed maintenance and repair of plastic water pipes for household water service.

| Employer | Location | Job Title | Dates |
|---|---|---|---|
| U.S. Army Sacramento Army Depot Sacramento, CA | Sierra Army Depot Herlong, CA | Security Guard | 1991-1992 |

Job Duties:  Plaintiff worked as a security guard.

///

NON-OCCUPATIONAL EXPOSURE(S):

FRICTION: In the 1960's and 1970's plaintiff repaired cars and trucks he owned. Plaintiff installed and removed asbestos-containing BENDIX (HONEYWELL INTERNATIONAL, INC.) drum brakes obtained from GRAND AUTO (O'REILLY AUTO ENTERPRISES, LLC (FKA CSK AUTO, INC.)), Napa, California. Plaintiff sanded the linings prior to installation. Plaintiff installed and removed asbestos-containing RAYBESTOS (RAYMARK INDUSTRIES, INC.) drum brakes obtained from NAPA AUTO PARTS (GENUINE PARTS COMPANY), Napa, California. Plaintiff sanded the linings prior to installation. Plaintiff installed an asbestos-containing BORG WARNER (BORGWARNER MORSE TEC LLC, AS SUCCESSOR-BY-MERGER TO BORG-WARNER CORPORATION) clutch obtained from NAPA AUTO PARTS (GENUINE PARTS COMPANY), Napa, California. Plaintiff sanded the clutch disc prior to installation. Plaintiff performed engine repair work. Plaintiff replaced water pumps, fuel pumps, carburetors, manifold gaskets, head gaskets, rocker arm gaskets and other engine gaskets. Plaintiff installed asbestos containing VICTOR (DANA COMPANIES, LLC (FKA DANA CORPORATION)) gaskets obtained from NAPA AUTO PARTS (GENUINE PARTS COMPANY), Napa, California.

HOME REMODEL: Plaintiff performed home remodel work on several houses he owned and lived in through the 1960's and 1970's. In approximately 1963 plaintiff remodeled his home at 144 or 145 Windsor Street, Napa, California. In approximately 1967 plaintiff remodeled his home on Fremont Street, Vallejo, California. In approximately the early 1960s, plaintiff converted a building in Vallejo he purchased from the government into a home. Plaintiff removed JOHNS MANVILLE (MANVILLE TRUST) asbestos siding from this building. In the 1970's plaintiff remodeled a home in Chester, California. In the mid 1960s, plaintiff remodeled a house on 4500 Redwood Road, Napa, California. Plaintiff performed drywall and roofing work. In approximately the late 1980s or early 1990s, plaintiff performed repair work on a house located in Clear Creek, California.